**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**EASTERN DIVISION**

| | |
|---|---|
| In re<br><br>JAMES W. TOSI,<br><br>                Debtor | Chapter 13<br>Case No. 13-14017-FJB |

**MEMORANDUM OF DECISION ON OBJECTION OF GREEN TREE SERVICING LLC**
**TO CONFIRMATION OF DEBTOR'S AMENDED CHAPTER 13 PLAN**

The matter before the Court is the objection of creditor Green Tree Servicing LLC ("Green Tree") to confirmation of the plan of chapter 13 debtor James W. Tosi (the "Debtor"). The plan provides that the Debtor would first be afforded 90 days in which to attempt to sell the property that secures Green Tree's mortgage debt but also that, if he is unsuccessful in selling the property within 90 days of confirmation, his interest in the property would then automatically be surrendered to *and vest in* Green Tree. Objecting to both the sale period and the vesting feature, Green Tree argues that the Debtor may not vest the property in Green Tree against its will, that vesting would deprive it of prerogatives that it would retain were the plan to provide simply for surrender. For the reasons set forth below, the Court agrees and now sustains the objection.

    I.      **Facts and Procedural History**

On July 1, 2013, the Debtor filed a petition for relief under chapter 13 of the Bankruptcy Code. Green Tree, as successor to the claim held by Flagstar Bank, is the servicer and holder of the first mortgage on the real property located at 185 East Foster Street, Melrose, Massachusetts (the "Property"). The Debtor owns the Property jointly with his wife, who is not also a debtor in this case. The Debtor and his wife are in divorce proceedings.

On March 27, 2014, the Debtor filed his Amended Chapter 13 Plan (the "Plan"). With respect to the secured claim of Flagstar—which is now, by assignment, the claim of Green Tree[1]—the Plan provides as follows:

> The mortgage claim of Flagstar Bank will be paid by sale of the marital home within three months of confirmation. After paying all valid, unavoided liens, the surplus (if any) will be paid to the debtor and his spouse pursuant to their automatic homestead exemptions subject to any order of the divorce court. In the event that the property is not sold within three months of confirmation, the debtor's interest in the property shall be surrendered pursuant to section 1325(a)(5)(C) and shall immediately vest in Flagstar Bank (or its principal) pursuant to sections 1322(b)(8) and (9) without further order of the court. The confirmation order, when recorded at the Registry of Deeds, shall constitute a deed of conveyance of the property.

This language constitutes the entirety of the Plan's treatment of Green Tree's secured claim. It sets forth a two-part treatment of Green Tree's secured claim. In the first instance, the Debtor would retain the Property, Green Tree's collateral, for a period of up to ninety days in which he would attempt to broker a sale of the Property and, from the proceeds, pay Green Tree's claim.[2] I understand that there is at present no buyer in waiting; sale and payment are contingent on the Debtor's finding a buyer willing to purchase at a price and on terms to which both the Debtor and his wife agree. Therefore, although the Plan states the mortgage claim "will" be paid by sale of the marital home within three months of confirmation, as if sale were certain to occur in the specified time, in fact a sale is uncertain.

Accordingly, the Plan provides for an alternate treatment if a sale is not consummated within ninety days of confirmation. In that event, the Plan states, "the debtor's interest in the property shall be surrendered pursuant to section 1325(a)(5)(C) and shall immediately vest in Flagstar Bank (or its principal) pursuant to sections 1322(b)(8) and (9) without further order of the court." To be clear, the Debtor's wife does not join in proposing this plan; the interest in property that the Debtor would

---

[1] Green Tree alleges that it is the "servicer/owner" of the mortgage in question, and the Debtor admits the same, albeit solely for purposes of the present contested matter.
[2] The Plan makes no provision to compensate Green Tree for the time-value of its collateral during this period of retention, but Green Tree does not object to this omission.

2

surrender to and vest in Green Tree is limited to his own interest in the Property. The Debtor's intent is for the surrender and vesting of his interest to be effective automatically, without need of further order of the Court or action on his part, upon the passage of ninety days from confirmation without a consummated sale.[3] The Plan states that the Property shall be "surrendered" and shall "vest." Though the Plan does not define either term, the Debtor clearly means to use them as they are used in the specified sections of the Bankruptcy Code: 11 U.S.C. § 1325(a)(5)(C) concerning surrender and § 1322(b)(9) concerning vesting. The Plan is thus predicated on the assumption—which the Debtor supports and Green Tree disputes—that vesting is a form of surrender and that surrendering and vesting are not mutually exclusive.

Green Tree objected to the Plan on two grounds.[4] The first is that the plan is not feasible because the Debtor has previously tried to sell the property without success, such that the ninety-day period for sale amounts to an unwarranted and prejudicial delay in surrender of the Debtor's interest. The second is that the Bankruptcy Code does not permit a mortgagor debtor to vest his title in the mortgagee without the latter's consent. In support of this last ground, Green Tree further states that although the plan purports to surrender the Debtor's interest in the Property to Green Tree, in fact the vesting provision, which would take effect at the same time as surrender, effectively denies to the mortgagee at least one of its prerogatives as mortgagee under state law, that of foreclosing on the debtor's interest, and thus effects no true surrender, just a vesting. The "surrender" is illusory. To this the Debtor responds that vesting is just a form of surrender and that, in 11 U.S.C. § 1322(b)(9), the

---

[3] As the Plan is presently drafted, the surrender and vesting cannot be effective immediately because the Plan specifies more than one possible transferee: Flagstar Bank or its principal. For purposes of this decision, I am assuming that, if the Plan is otherwise deemed confirmable, the Debtor will be able to rectify this difficulty.
[4] As a third "objection," Green Tree added: "confirmation of the debtor's plan is speculative" and "to hold the creditor to a date three months after a speculative date of confirmation is prejudicial to the creditor who continues to pay real estate taxes and hazard insurance on this property." In substance this is not an objection to confirmation; to state that confirmation is speculative is not to give a reason why the plan should not be confirmed.

3

Bankruptcy Code expressly permits a debtor, through the chapter 13 plan and at his or her option alone, to vest property of the estate in any entity.

After a hearing on the matter, I ordered the parties to file further briefs and then took the matter under advisement. Green Tree later moved for relief from the automatic stay to exercise its rights as to the Property and, without objection from the Debtor, the Court granted the relief requested. Though he did not oppose the motion, the Debtor noted that its allowance would not render moot the present objection to confirmation. The Court agrees that the grant of relief from the stay does not itself render moot the objection to confirmation: the plan, if confirmed, could vest the Debtor's interest in Green Tree before Green Tree succeeds in foreclosing. If and when Green Tree forecloses on the Property, the objection and the plan provisions to which they pertain will become moot, but I have received no indication to date that foreclosure has occurred.

## II. Jurisdiction

The matter before the court is an objection to confirmation of a chapter 13 plan. It arises under the Bankruptcy Code and in a bankruptcy case and therefore falls within the jurisdiction given the district court in 28 U.S.C. § 1334(b) and, by standing order of reference (codified in the district court's local rules at L.R. 201, D. Mass.), referred to the bankruptcy court pursuant to 28 U.S.C. § 157(a). It is a core proceeding within the meaning of 28 U.S.C. § 157(b)(1). 28 U.S.C. § 157(b)(2)(L) (core proceedings include confirmation of plans). The bankruptcy court accordingly has authority to enter final judgment.

## III. Discussion

### a. Objection to 90-Day Sale Period

Green Tree's first objection, on which it did not elaborate, is simply that the Plan is not feasible because the Debtor has already attempted to market the property without success, such that the sale period amounts to an unwarranted and prejudicial delay in surrender of the Debtor's interest and Green

4

Tree's consequent ability to exercise its rights as to the interest. The Debtor denies that sale is not feasible; he contends that efforts to sell are on-going, and that he must take into account that his wife, too, has rights in the Property that must be honored. The Debtor does not elaborate on how his wife's rights bear on the feasibility of selling within the ninety days.

The first thing to note about this objection is not its substance, feasibility and prejudice, but simply that it is an objection, that Green Tree does not assent to the Plan's confirmation. Section 1325(a) of the Bankruptcy Code sets forth requirements for confirmation of a chapter 13 plan. Among other things, it states that with respect to each allowed secured claim provided for by the plan, the plan must satisfy one of three enumerated options: acceptance, cramdown, or surrender. The plan must either (i) obtain the acceptance of the holder of the secured claim, § 1325(a)(5)(A), (ii) satisfy the conditions of the so-called "cramdown" option, § 1325(a)(5)(B), or (iii) surrender the property securing such claim to the holder of the claim, § 1325(a)(5)(C). 11 U.S.C. § 1325(a)(5). In this instance, it is undisputed that the cramdown option does not apply and that Green Tree has not accepted the Plan; indeed it objects to both phases of the treatment that the Plan proposes for Green Tree's secured claim. To qualify for approval, only one option remains: the plan must surrender the property securing the claim to the claim holder. Is this plan fairly characterized as one that surrenders the property securing the claim to Green Tree? For two reasons, I conclude that it is not.

The first is that such surrender as the Plan does propose would not become effective upon confirmation but, if it became effective at all, only ninety days thereafter, and is contingent on failure to consummate a sale within the ninety days—if a sale should occur, there would be no surrender at all. In short, with respect to the property that secures Green Tree's claim, the Plan does not exclusively or even necessarily effect a surrender. Certainly it would effect no surrender during the ninety-day period that is the subject of Green Tree's first basis of objection.

"Surrender," though not defined in the Bankruptcy Code, is nonetheless settled and well understood. "'[S]urrender' means only that the debtor will make the collateral available so the secured creditor can, if it chooses to do so, exercise its state law rights in the collateral." *In re Williams*, 542 B.R. 514, 518 (Bankr. D. Kan. 2015), quoting from *In re Rose*, 512 B.R. 790, 793 (Bankr. W.D. N.C. 2014) (construing surrender for purposes of § 1325(a)(5)(C)); *In re Pratt*, 462 F.3d 14, 18-19 (1st Cir. 2006) (construing surrender for purposes of 11 U.S. C. § 521 and holding that "the most sensible connotation of 'surrender' in the present context is that the debtor agreed to make the collateral available to the secured creditor"); *In re Canning*, 706 F.3d 64, 69 (1st Cir. 2013) (same); *In re Arsenault*, 456 B.R. 627, 629–30 (Bankr. S.D. Ga. 2011) ("surrender of encumbered property leaves the secured creditor in control of the exercise of its remedies") and sources cited.

The surrender prong of § 1325(a)(5)(C) essentially gives safe shelter to a particular treatment of a secured claim, assurance that the treatment in question, surrender, will not impede confirmation. It does this because "surrender," as it is used in the Bankruptcy Code in general and in §1325(a)(5)(C) in particular, leaves the rights of the creditor to its collateral unmodified and unimpaired. In surrendering the property, the debtor simply makes the collateral available to the creditor to exercise such rights as it has in the collateral. A creditor can have no basis for complaint when its rights are unaffected.

When the plan proposes that the debtor will retain the creditor's collateral for a period of time, the plan impairs the creditor's state law rights by preventing the creditor from exercising them during that period. The retention of collateral for any length of time is inconsistent with surrender and takes the plan out of the operation of that subsection. Though the Plan provides for surrender at a later time, as a default option, still it does not solely and exclusively provide for surrender. A plan that modifies the secured creditor's rights in its collateral in any degree[5] is not one that surrenders the property in the

---

[5] This case does not turn on degree, but ninety days is not an insignificant time; and if ninety days could be justified, then why not five years, the maximum length of a chapter 13 plan? The Debtor does not address this issue.

6

manner required by §1325(a)(5)(C). Much less does it satisfy §1325(a)(5)(C) where the deferred surrender is contingent and may never occur. I conclude that because the Plan proposes that the Debtor retain and attempt to sell the property before effectuating its surrender, it does not satisfy the surrender prong of §1325(a)(5). Lacking Green Tree's consent, the Plan does not satisfy §1325(a)(5) and therefore cannot be confirmed.

### b. Vesting

The Plan also fails to effect a surrender for a second reason: that though it uses the nomenclature of surrender, in fact it merely vests the property in Green Tree, an act that substantially modifies Green Tree's rights as to its collateral, is thus inconsistent with surrender, and therefore effects no true surrender at all, merely a vesting.

The parties and case law are in agreement that, as these terms are used in the Bankruptcy Code, surrender and vesting have different meanings and are not synonymous, that vesting is not merely surrender by another name. As explained above, to surrender means to make the collateral available to the secured creditor to exercise its preexisting rights as to the collateral; nothing about the act of surrender modifies those rights. On the other hand, to vest property in another, as contemplated in 11 U.S.C. § 1322(b)(9) ("a plan may provide for the vesting of property of the estate . . . in the debtor or in any other entity"), is to effect a transfer of ownership of that property from the estate to another person or entity. "Vesting means transferring title." *In re Sagendorph*, 2015 WL 3867955 *2 (Bankr. D. Mass. 2015). Even those courts that would permit forced vesting agree that surrender and vest have these distinct meanings. See, for example, *Sagendorph*, 2015 WL 3867955 *4 ("The words 'vesting of property' in § 1322(b)(9) and 'surrender the property' in § 1325(a)(5)(C) are different and mean different things.").

While acknowledging this difference in meaning, Chief Judge Melvin Hoffman of this district, in *Sagendorph*, nonetheless found the two terms not to be mutually exclusive. He reasoned that

7

surrender, as a ceding of possessory rights, is merely "a preliminary step in the transferring of title." *Id*. Accordingly, Judge Hoffman concluded, at least implicitly, that the act of surrendering collateral was not incompatible with, and did not preclude, the debtor mortgagor's vesting of the same collateral in the mortgagee.

This reasoning understates the meaning of surrender, which is not merely to cede possessory rights, but to permit the creditor to exercise its preexisting property rights as to the collateral. The vesting of title in the mortgagee goes well beyond surrender of the collateral by altering the mortgagee's rights as the holder of a mortgage. See *In re Williams*, 542 B.R. at 521 (holding that vesting property in the secured creditor would impair its rights under state law). A Massachusetts mortgage is a form of title under which the mortgagee enjoys various rights and prerogatives spelled out in Massachusetts law. Upon the debtor's vesting of his interest in the secured creditor and by the doctrine of merger, the mortgage would merge into and be superseded by the transferred title. That is, the debtor would change the mortgagee's form of ownership from that of mortgagee to that of tenant in common with the debtor's wife. No longer would the secured creditor have the substantial prerogatives of a mortgagee. Among other things, it could not sell the property at foreclosure.[6] In a foreclosure sale, unsatisfied junior liens are automatically discharged, but the vesting of title in the mortgagee would leave junior liens in place, meaning that the value of the mortgagee's interest would be diminished by the value of any such liens. In addition, the secured creditor would now be saddled with new responsibilities that arise from its new form of ownership, including real estate taxes, maintenance, the avoidance of nuisances, and environmental remediation responsibilities. The specifics need not be enumerated because it is undisputed that the act of vesting alters the creditor's form of ownership and hence its preexisting rights in the collateral. In doing so, vesting precludes surrender: a debtor cannot

---

[6] The Debtor points out that Green Tree would still remain a mortgagee as to his wife's interest in the Property, and that Green Tree could still foreclose on that interest. This observation is beside the point: the interest in property that is presently in question is the Debtor's, not his wife's.

permit a mortgagee to exercise its preexisting rights where, by vesting the mortgaged property in the mortgagee, it has altered those rights out of existence. Surrender of collateral to a mortgagee and vesting of the same collateral in the mortgagee are thus mutually exclusive. A plan cannot do both while giving full and proper meaning to each term; and a plan that purports to do both at once must be denied confirmation as internally inconsistent.

Of course, the real emphasis in the present plan, as in many like it, is the act of vesting: this is in fact a vesting plan, not a surrender plan. Some debtors, as part of the fresh start they seek in bankruptcy, want to rid themselves of the burdens of property ownership. Where the mortgagee is not willing to simply take title or cannot or will not foreclose fast enough to provide the relief the debtors seek, debtors invoke the nomenclature of surrender to satisfy § 1325(a)(5). But where vesting occurs, there is no true surrender. The surrender is illusory, and therefore the plan does not satisfy § 1325(a)(5).

Some courts have been reluctant to reach this conclusion because they believe it fails to give effect to § 1322(b)(9), under which a chapter 13 plan "may provide for the vesting of property of the estate, on confirmation of the plan or at a later time, in the debtor or in any other entity." 11 U.S.C. § 1322(b)(9). Again I disagree. The fact that § 1322(b)(9) cannot be used to override § 1325(a)(5) hardly renders it devoid of purpose. Section 1322(b)(9) is broad in its applicability and is not by its terms limited to the treatment of claims in general or secured claims in particular. For example, where a plan provides for a sale of property, § 1322(b)(9) permits the plan itself to effect the attendant transfer of title. Even with respect to claims of the type at issue here, § 1322(b)(9) can be invoked consistently with § 1325(a)(5) where the mortgagee assents to the proposed vesting. As Judge Henry Boroff of this district recently observed:

> [A] debtor could propose a plan which would vest property in a grantee
> that has consented (or from whom the debtor plans to seek consent).
> Or could propose a plan which would vest property in a grantee in the

9

> hopes that such party will not object, and that its silence might be deemed consent.

*In re Weller*, 2016 WL 164645 *3 (Bankr. D. Mass. 2016). Section 1322(b)(9) thus has meaning and utility without being construed as a fourth option for satisfaction of § 1325(a)(5).

There is another problem with trying to view § 1322(b)(9) as a fourth option for satisfaction of §1325(a)(5): that the former specifies no requirement as to the value of property that must be vested in the secured creditor. In the Bankruptcy Code, where a debtor is permitted to change a secured creditor's rights as to its collateral—to substitute new rights for those existing at the time of the bankruptcy filing—other than by agreement, the Bankruptcy Code protects the secured creditor by specifying the value of the property or payments that the plan must provide. See, for example, 11 U.S.C. § 1325(a)(5)(B) (requiring that "the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim"); 11 U.S.C. § 1225(a)(5)(B) (same); 11 U.S.C. § 1129(b)(2)(A) (requiring that the holder of the claim "receive on account of such claim deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property"); 11 U.S.C. § 1129(b)(2)(C) (requiring that the holder of the claim realize "the indubitable equivalent of such claim"); and 11 U.S.C. § 722 (permitting individual chapter 7 debtor to redeem tangible personal property from a lien "by paying the holder of such lien the amount of the allowed secured claim of such holder that is secured by such lien in full at the time of redemption"). Section 1322(b)(9) contains nothing of this sort and, indeed, does not on its face even purport to address the satisfaction of claims of any kind. Accordingly, in *Williams*, the court noted that the presence of protective standards in 11 U.S.C. § 1325(a)(5)(B) and the absence of corresponding standards in § 1322(b)(9) as evidence that Congress did not intend for the latter to alter the confirmation standards in § 1325(a)(5). *In re Williams*, 542 B.R. at 521-22.

For these reasons, and following *Weller*, *Williams*, and the majority of courts that have addressed this issue, I conclude that the option in § 1322(b)(9) does not alter the mandate in § 1325(a)(5); the former is not, in effect, a fourth option for satisfaction of the latter. As Judge Boroff further concluded: "What a Chapter 13 debtor may *not* do, however, is substitute the *options* which may be proposed by a plan under § 1322 for *requirements* mandated by § 1325 for confirmation of a plan." *In re Weller*, 2016 WL 164645 *3. *Accord In re Sherwood*, 2016 WL 355520 (Bankr. S.D. N.Y. 2016) (forced vesting not permitted); *In re Weller*, 2016 WL 164645 *4 ("A plan which 'vests' property in a secured creditor does not fulfill the requirements of § 1325(a)(5)(C) and may not be confirmed over that secured creditor's objection"); *In re Williams*, 542 B.R. at 521-22; *Bank of New York Mellon v. Watt*, 2015 WL 1879680, *4 (D. Or. 2015), reversing *In re Watt*, 520 B.R. 834 (Bankr. D. Or. 2014); *In re Rose*, 512 B.R. 790, 794-95 (Bankr. W.D. N.C. 2014) (§ 1322(b)(9) cannot be used to compel secured creditor to accept property against its will); and *In re Rosa*, 495 B.R. 522, 524 (Bankr. D. Ha. 2013) (where secured creditor did not object to the plan but the chapter 13 trustee did, court held that § 1325(a)(5)(C), the provision permitting surrender as a treatment for allowed secured claims, did not "fully validate" the plan because the plan proposed to vest title to the property "in addition to" the surrender; but the court confirmed the plan under § 1325(a)(5)(A) because the secured creditor assented to it). But see *In re Sagendorph*, 2015 WL 3867955 (Bankr. D. Mass. 2015) (plan may provide for forced vesting of property in a secured creditor subject to secured creditor's right to object to the plan on the grounds that it was not proposed in good faith); *In re Zair*, 535 B.R. 15 (Bankr. E.D. N.Y. 2015) (permitting involuntary vesting); and *In re Stewart*, 2015 WL 5138196 (Bankr. D. Minn. 2015) (same; surrender in § 1325(a)(5)(C) and vesting in § 1322(b)(9) are different but may be used in tandem).

The Debtor also argues that 11 U.S.C. § 1306(b) supplies separate authority, from § 1322(b)(9), for a plan's providing for vesting of mortgaged property in the mortgagee over the mortgagee's objection. Section 1306(b) states that "[e]xcept as provided in a confirmed plan or order confirming a

plan, the debtor shall remain in possession of all property of the estate." The import of this section, argues the Debtor, is that, by negative implication, a plan may provide that the debtor shall not remain in possession of property of the estate; and the Debtor further argues that the only way to effectuate this is by providing for vesting of property of the estate in some other entity.

Section 1306(b) is wholly unavailing to the Debtor's cause. First, it deals only with possession, not, as § 1322(b)(9) clearly does, with title and ownership. Even if it could be construed to have broader applicability, it says nothing about when and whether a plan may override its general rule. For that we must turn to the sections of chapter 13 that deal with plans and their confirmation, including §§ 1325(a)(5) and 1322(b)(9). That is, § 1306(b) adds nothing of import to the discussion of those sections above.

In a supplemental brief, the Debtor makes a similar argument that he founds this time on 11 U.S.C. § 1327(b), which states: "Except as otherwise provided in the plan or in the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor." The Debtor argues that this supplies authority for a debtor, through a plan, to provide for vesting of property of the estate in an entity other than the debtor.

This section does deal with title and not merely possession, but the Debtor's recourse to it otherwise suffers the same infirmities as his appeal to § 1306(b). Section 1327(b) merely tells us how to construe a confirmed plan where the plan and confirmation order are silent on a particular issue. It says nothing about when and whether a plan may override the default rule that property of the estate vests in the debtor. Again, for that we must turn to the sections of chapter 13 that deal with plans and their confirmation, including §§ 1325(a)(5) and 1322(b)(9). Section 1327(b) adds nothing of import to the discussion of those sections above. The mandate of § 1325(a)(5) still applies and bars confirmation of a vesting plan to which the secured creditor does not assent.

For these reasons, Green Tree's objection to confirmation of the Plan must be sustained. A separate order shall enter accordingly.

Date: March 4, 2016

_____
Frank J. Bailey
United States Bankruptcy Judge